**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **NICHOLE COSENS-WAGAMAN,** | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Case No: 1:23-cv-01953-JMC |
| **MARYLAND DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES,** | * | |
| | * | |
| *Defendant.* | | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff filed the above-captioned case in the Circuit Court for Baltimore City on May 30, 2023, alleging sexual harassment, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't § 20-606. (ECF No. 2, 56). (ECF No. 59). Plaintiff filed an Amended Complaint on March 25, 2025.  (ECF No. 56).  The Amended Complaint asserts violations in four counts: a hostile work environment in violation of Title VII (Count I); a hostile work environment in violation of MFEPA (Count II); retaliation in violation of Title VII (Count III); and retaliation in violation of MFEPA (Count IV). (ECF No. 56). Upon the close of discovery, Defendant filed the present Motion for Summary Judgment. (ECF No. 65). The Motion has been fully briefed, (ECF Nos. 65, 76, 82), and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendant's motion will be GRANTED in part and DENIED in part**.**

I.      BACKGROUND

        a.   Factual Background

        Plaintiff has been employed as a correctional officer by the Maryland Department of Public

Safety and Correctional Services ("DPSCS") since October 10, 2018.  (ECF No. 65-9 at 4).[1]

Specifically, Plaintiff holds the position of a Corporal ("Cpl.") at the 18701 Roxbury Road,

Hagerstown, Maryland correctional institution facility ("RCI").  *Id.* Plaintiff alleges that since

2020, she has been sexually harassed by way of "crude sexual comments, unwanted sexual

advances, and threats against her employment."  (ECF No. 56 at 3). She asserts that three different

correctional officers with whom she has worked sexually harassed her in a number of instances.

*See generally id.*

                i.   Late 2020 – Sergeant Pauliuc Incident

        The first instance of alleged sexual harassment occurred "late in 2020." (ECF No. 65-3 at

6).  At the time, Plaintiff was going through pistol qualification training at RCI.  (ECF No. 65-4 at

9). Plaintiff asserts that during a break Sergeant Viorel Pauliuc ("Sgt. Pauliuc") "forced himself

on [Plaintiff] by "[sticking] his hands down [her] pants…and [exposing] himself." *Id.* at 10.

Afterwards, Plaintiff told two individuals, Sergeant Alexander and Captain Hoffman, that

"something had happened" with Sgt. Pauliuc and she "felt uncomfortable."  *Id.* at 11-12. In

response, Captain Hoffman "told [Plaintiff] the proper channels of who to talk to and how to report

it." *Id.* at 13.  Plaintiff did not do so with respect to the 2020 occurrence. *Id.*

                ii.   April 2022 – Sergeant Wetzel Incident

        The second instance of alleged sexual harassment occurred in April of 2022.  *Id.* at 14.  In

this instance, Plaintiff asserts she was assigned to a shift working on the front lobby at RCI when

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

Sergeant Bradley Wetzel ("Sgt. Wetzel") "exposed himself" to her. *Id.* at 14-15. Specifically, she asserts that he "pulled her into the mail room" and "forced [her] hand down his pants" before she "pushed [herself] away…and backed out." *Id.* In response, Plaintiff "hid in the bathroom for about 15 minutes [to] 20 minutes, and then…came back out" and "made a phone call to the captain at the time." *Id.* at 15. Plaintiff told Captain Riffey that Sgt. Wetzel "tried to make advances on [her]" and no longer felt comfortable being around him. *Id.* at 16.

### iii.   May 2022 – Corporal Rowland Incidents

The third instance of alleged sexual harassment began in May 2022 during firearms training. *Id.* at 17-18. Corporal Rowland ("Cpl. Rowland") was one of Plaintiff's firearms training instructors. (ECF No. 65-9 at 4). The firearms training took place from May 16-18 and 24-25 of 2022. *Id.* During training, Plaintiff failed a shotgun test because she "was not able to shoulder the shotgun properly." (ECF No. 65-4 at 17). Specifically, the shotgun "[flew] out of [Plaintiff's] hand at one point in time because it was so powerful." *Id.* In response, Cpl. Rowland and some unspecified officers "said that they would train [Plaintiff] and drill [her] really hard more than in one way on how to shoulder the shotgun." *Id.* During the break, Cpl. Rowland allegedly approached Plaintiff and showed her "a picture of him on a cell phone. It was a mirror…selfie picture of him…and he had a brown tannish towel around his waist." *Id.* at 17-18. Plaintiff asserts that Cpl. Rowland said "that was what a real man looked like." *Id.* at 18. Thereafter, he "asked [Plaintiff] if [she] had any plans," to which she responded that she did. *Id.* He then asked her if she wanted to "meet him at the park and ride up the road by Walmart and he could show [her] what a good time was." *Id.*

On another day of the firearms training, Plaintiff "was told to stay back in the classroom" while others "went out to shoot the rifle." *Id.* While in the classroom, Cpl. Rowland entered the

room and Lieutenant Younger "had closed the door." *Id.* Plaintiff "tried to get out," but "the door was locked." *Id.* "Nothing happened in that room." *Id.* at 18.  Later that same day, Plaintiff was "able to...retake the qualification course for the shotgun" during lunch. *Id.* at 19-20.    While Plaintiff was in the training room alone, Cpl. Rowland "came in and he pushed [her] up against the wall and was...holding [her] mouth" and said he "wanted to do some things to [her]." *Id.* at 20.

On another occasion, Plaintiff finished a sixteen-hour shift at RCI and went to her home to meet with her boyfriend, Alex Mikhov.  *Id.* at 21.  Shortly after arriving home, Plaintiff went to bed, and Mr. Mikhov left the house so she could sleep.  *Id.*  When leaving, Mr. Mikhov left the garage door opened, which "could only open and close from the inside because there was no...outside door opener."  *Id.* Plaintiff awoke to "a phone call from [Mr. Mikhov] saying that there was motion" on Plaintiff's Ring camera by the garage.  *Id.*  Mr. Mikhov indicated "he could hear banging," and Plaintiff also "heard the banging."  *Id.*  Based on the Ring camera footage, Plaintiff and Mr. Mikhov recognized Cpl. Rowland as the individual banging outside her house. *Id.* at 24. Mr. Mikhov spoke with Cpl. Rowland over the Ring camera app. *Id.* Cpl. Rowland indicated Plaintiff invited him over and left shortly thereafter.  *Id.*  Plaintiff reported the incident to a captain and lieutenant and indicated that "an officer...had just shown up to [her] home unannounced, uninvited, unwelcomed" and then reported the same to the sheriff's department. *Id.* at 25. The sheriff's department sent a deputy to speak with Plaintiff.

Before the deputy arrived, Mr. Mikhov returned to Plaintiff's house at her request. *Id.* at 24. Mr. Mikhov received a phone call from RCI, in which Lieutenant Younker told him Cpl. Rowland "is a changed man" who "doesn't do this anymore." *Id.* at 25.  He asked Mr. Mikhov to "take measures into his own hands to sweep this under the rug."  *Id.*  After speaking with the

Deputy who responded to Plaintiff's call to the sheriff's department, Plaintiff "went to the courthouse and…filed for a temporary peace order, and it was approved." *Id.* at 26.

### iv.  October 8, 2022 – Sgt. Pauliuc Incident

The last instance of alleged sexual harassment occurred on October 8, 2022.  (ECF No. 65-18 at 3). Plaintiff alleges that Sgt. Pauliuc was working with her during the night shift at the hospital.  (ECF No. 65-4 at 29). Sgt. Pauliuc "showed [Plaintiff] on his phone that he was taking pictures of [her]."  *Id.* at 30.  She "told him to delete them."  *Id.* Later that same night, he approached Plaintiff and allegedly showed her a pornographic video playing on his phone. *Id.* at 31. At the same time, he told her "this is what I do to stay awake."  *Id.* Plaintiff asserts that Sgt. Pauliuc further "came out and…would take a picture of [her] face" and overlay a filter that superimposed a tongue sticking out of Plaintiff's mouth.  *Id.*

### v.  Equal Employment Opportunity Commission ("EEOC") Charges of Discrimination

#### 1.  August 21, 2022 – First Charge

On August 21, 2022, Plaintiff filed a charge with the EEOC (the "First Charge").  (ECF No. 65-9).  In the First Charge, Plaintiff reported that Cpl. Rowland sexually harassed her by way of "sexual comments, unwanted sexual advances, and threats against [her] employment."  *Id.* at 4. Specifically, she reported the May 2022 incidents in which Cpl. Rowland allegedly made inappropriate, sexually charged remarks to her during firearms requalification training. *Id.* She also reported the May 31, 2022, incident in which Cpl. Rowland came to her house.  *Id.* at 5. Regarding retaliation, she reported that

> [O]n July 14, 2022, another officer conveyed an alarming message to me through my boyfriend, stating, "She needs to walk on eggshells for a while. They are after her and her job. She's pissed all of the 'boys' off and now they are going after her full force. They are going to do everything they can to get her hemmed up. Tell her I believe her, and she's brave for doing this, but she needs to be careful, watch her back and to tread lightly."

*Id.*

She further alleged she was denied "(i) scheduling change requests, (ii) overtime rights, and (iii) desirable work assignments at RCI." *Id.* at 6.  Specifically, she included a report of an instance in which "an aligned coworker of Cpl. Rowland declined to grant [Plaintiff] leave for the overnight shift before [her] court appearance for the final peace order against Cpl. Rowland." *Id.*  Finally, she reported "Cpl. Rowland and his aligned coworkers have sexually harassed me, discriminated against me on the basis of my gender, and retaliated against me." *Id.*  To that end, Plaintiff indicated "Cpl. Rowland and his coworkers, some of whom I do not identify by name here but can name in the course of the Commission's investigation" retaliated against her.  *Id.* at 4.

### 2. December 14, 2022 – Amended Charge

On December 14, 2022, Plaintiff amended the First Charge (the "Amended Charge"). (ECF No. 65-17).  In the Amended Charge, Plaintiff added a report of the April 2022 incident in which Sgt. Wetzel allegedly sexually assaulted her.  *Id.* at 6.  Though the Amended Charge references "other employees" who made inappropriate and unwanted sexual comments, Plaintiff did not include any reference to Sgt. Pauliuc.  *See generally id.*

### 3. October 15, 2024 – Second Charge

Two years later, and after Plaintiff brought the above-captioned case, Plaintiff filed a charge of discrimination (the "Second Charge") on October 15, 2024.  (ECF No. 65-18). In the Second Charge, Plaintiff reported alleged retaliation that occurred "[s]ince [her] initial EEOC charge."  *Id.* at 3. Plaintiff referred to the October 25, 2022 notice that DPSCS "found her complaint against Cpl. Rowland unsubstantiated and that Cpl. Rowland would face no discipline." *Id.* Plaintiff also reported RCI suspended her after filing the above-captioned case.  *Id.* at 4.  In addition, she alleged she was "shunned at work [and] not received overtime shifts."  *Id.* She

included a new report describing the October 8, 2022 incident in which Sgt. Pauliuc allegedly showed a pornographic video to Plaintiff. *Id.* at 3-4. Plaintiff made no reference to the allegations with respect to the alleged sexual assault perpetrated by Sgt. Pauliuc from 2020.

### vi.   Additional Alleged Retaliation

As reflected in the EEOC Charges, Plaintiff alleges RCI retaliated against her for reporting the alleged sexual harassment. *Id.*; *see also* (ECF Nos. 65-17, 65-18). In addition to the allegations set forth in the First and Second Charge, Plaintiff asserts RCI retaliated against her by issuing disciplinary charges against her for using time clocks to clock in and clock out of shifts at other institutions. (ECF No. 65-4 at 37). According to Plaintiff, she and Mr. Mikhov were "the only ones that were disciplined for this, but…were not the only officers utilizing time clocks at other institutions." *Id.* The record does not make clear when exactly this practice began. *See id.* Plaintiff received a "level one" disciplinary report that "was supposed to be reduced to a letter of counseling." *Id.* Moreover, Plaintiff alleges that someone at RCI keyed her car.[2]

In September 2024, Officer Darnell Scott accused Plaintiff of harassment. (ECF No. 65-12 at 16-17). Specifically, Officer Scott filed two internal complaints with RCI's investigation unit after Plaintiff allegedly bit him on the arm. *Id.* at 12. Subsequently, RCI conducted an investigation and "sustained five violations of Department policy" against Plaintiff. (ECF No. 65-13 at 3). Plaintiff does not characterize the contact made with Officer Scott as a "bite." (ECF No. 65-15 at 10-11). Plaintiff characterizes the interaction as "horseplay." *Id.* at 14-15. Plaintiff emphasizes that workplace culture aligned with her characterization of the incident. (ECF No. 76 at 16).

---

[2] Based on the summary judgment memoranda and exhibits attached thereto, the Court cannot determine a date upon which Plaintiff's car was vandalized.

b.  <u>Procedural History</u>

Defendants Carlos D. Bivens and Maryland Department of Public Safety and Correctional Services removed the matter to this Court, asserting jurisdiction under 28 U.S.C § 1331 and § 1343. (ECF No. 1). On September 17, 2024, Defendants filed a Motion for Summary Judgment. (ECF No. 36). In reviewing the parties' summary judgment memoranda, the Court identified a potential issue regarding subject matter jurisdiction: although Plaintiff had referenced Title VII in her Complaint, both Counts solely alleged violations of MFEPA. (ECF No. 50).  Thereafter, Plaintiff filed a Motion for Leave to Amend the Complaint in which Plaintiff addressed the subject matter jurisdiction issue and dropped Defendant Carlos D. Bivens as a party.[3] (ECF No. 51).  The Court granted the motion and directed the Clerk to terminate Mr. Bivens as a party on March 19, 2025. (ECF No. 53).  Plaintiff filed the Amended Complaint on March 25, 2025 (ECF No. 56), and discovery re-opened on April 1, 2025.  (ECF No. 59).  At the conclusion of an extended discovery period, Defendant filed the present Motion for Summary Judgment. (ECF No. 65).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his]

---

[3] In Plaintiff's Opposition Motion, Plaintiff argues that Warden Bivens "should not be dismissed" and "dismissal would improperly remove from the jury's consideration a supervisor whose actions lie at the heart of Plaintiff's claims."  (ECF No. 76 at 32).  Plaintiff clarified in a Correspondence filed on October 21, 2025, that the argument regarding Warden Bivens was included in error. (ECF No. 84).

pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998). "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *Angelini v. Balt. Police Dep't*, 464 F. Supp. 3d 756, 776 (D. Md. 2020).

## III.    ANALYSIS

Defendant urges this Court to grant summary judgment for three reasons. (ECF No. 65-2). First, Defendant argues Plaintiff failed to exhaust administrative remedies by failing to include each allegation in the First Charge with the EEOC. *Id.* at 13. Second, Defendant argues that Defendants had unrebutted, non-discriminatory reasons for suspending Plaintiff. *Id.* at 21. Third, Defendant argues RCI took appropriate action in response to Plaintiff's sexual harassment complaints as a matter of law. *Id.* at 25.

A.    **The Allegations Pertaining to Sgt. Pauliuc are Barred for Failure to Exhaust Administrative Remedies.**

A plaintiff must file a timely charge of discrimination with the EEOC before filing a discrimination suit. *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b), (f); 29 U.S.C. § 633a(d)). Such a charge must be filed within 300 days after the alleged unlawful employment action transpired. *Davis v. Baltimore Hebrew Congregation*, 985 F. Supp. 2d 701, 713 (D. Md. 2013). "A charge is acceptable only if it is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (quoting 29 C.F.R. § 1601.12(b)). Therefore, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII…lawsuit." *Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019). Accordingly, if a discrimination claim exceeds the scope of an EEOC charge or any charges "that would naturally have arisen from an investigation thereof, they are procedurally barred." *Chacko*, 429 F.3d at 509. When the EEOC charge provides no basis upon which the EEOC may investigate a particular claim, neither the EEOC nor the employer has been put on proper notice. *See Walton*, 33 F.4th at 173. Indeed, "requiring a party to file [an administrative charge] ensures that the employer is put on notice of the alleged violations" and "[t]he goals of providing notice and an opportunity for an agency response would be undermined ... if a plaintiff could raise claims in litigation that did not appear in [her] EEOC charge." *Syndor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012).

Defendant urges this court to dismiss Plaintiff's claims with respect to Sgt. Wetzel, Sgt. Pauliuc, the vehicle damage, and selective discipline. (ECF NO. 65-2). Plaintiff argues that the alleged acts fall under the continuing violation doctrine as set forth in *Nat'l R.R. Passenger Corp.*

*v. Morgan*, 536 U.S. 101, 117 (2002).  However, *Morgan* does not circumvent the requirement

that a plaintiff exhaust the administrative process.  *Dennis v. County of Fairfax*, 55 F.3d 151, 156

(4th Cir. 1995).  "The exhaustion requirement ensures that the employer is put on notice of the

alleged violations so that the matter can be resolved out of court if possible*." Cowgill v. First Data

Techs., Inc*., 41 F.4th 370, 384 (4th Cir. 2022) (quoting *Miles v. Dell, Inc*., 429 F.3d 480, 491 (4th

Cir. 2005)).  Accordingly, the EEOC charges must include enough information "to identify the

parties, and to describe generally the action or practices complained of."  *Chacko*, 429 F.3d at 508.

### 1.    Claims Against Sgt. Wetzel and Sgt. Pauliuc

Several cases provide guidance on including the allegations of harassment concerning Sgt.

Wezel and Sgt. Pauliuc.  In *Chacko v. Patuxent Institution*, the Fourth Circuit barred claims the

plaintiff failed to raise during the administrative process when the allegations referenced only

discrete acts and not a "continuous pattern of abuse."  *Id.* at 511.  There, the plaintiff brought a

claim for discrimination based on alleged derogatory national origin remarks made by certain

supervisors.  *Id.* In his lawsuit, the plaintiff sought to recover for claims that supervisors and certain

co-workers made derogatory remarks for his twenty-year career.  *Id.* The court reasoned that

because the allegations set forth at the administrative level "involved three specific acts at specific

times," they did not give rise to a continuous pattern of abuse, and "a reasonable investigation of

discrete instances of supervisor misconduct not involving name calling could not be expected to

lead to a continuous pattern of nonsupervisory misconduct which did involve name calling." *Id.* at

512.

In *Balas v. Huntington Ingalls Industries, Inc.*, the Fourth Circuit recognized that the proper

way to expand the scope of a potential lawsuit is to amend the EEOC charge.  *Balas v. Huntington

Ingalls Indus.*, *Inc.*, 711 F.3d 401, 408 (4th Cir. 2013).  In *Balas*, the plaintiff alleged specific

instances of sex discrimination and retaliation in a letter she sent to the EEOC on July 19, 2010. *Id.* at 405. Based on the Plaintiff's letter, the EEOC "prepared a charge on her behalf," which she signed on July 26, 2010. *Id.* The plaintiff sent a second letter on October 2, 2010, which included an allegation that she had been inappropriately hugged "later that month." *Id.* The EEOC subsequently prepared an amended charge based on the additional allegation concerning the hug. *Id.* Finding that only the allegations set forth in the EEOC charges, and not those in the letters the plaintiff sent the EEOC, could be considered in the plaintiff's lawsuit, the Fourth Circuit reasoned that "persons alleging discrimination have a different form of recourse if they determine that their initial charge does not read as they intended: they may, as [the plaintiff] did, file an amended charge with the EEOC." *Id.* at 408.

Like the allegations in *Chacko* and *Balas*, Plaintiff's claims pertaining to Cpl. Rowland, Sgt. Wetzel, and Sgt. Pauliuc involve different, specific acts, each of which entitled the Defendant to be put on notice of these alleged violations of Title VII. *See id.* at 511; *Balas*, 711 F.3d at 405. With respect to the Amended Charge, Defendant urges that Plaintiff "claimed that the alleged discrimination and harassment began on May 16, 2022—not in August 2020 or April 2022." (ECF No. 65-2 at 18). Under *Balas*, the Court does not agree with Defendant's contention that the allegations set forth in the Amended Charge cannot be considered. *See Balas*, 711 F.3d at 408. Further, the allegations regarding Sgt. Wetzel allegedly occurred in April of 2022. (ECF No. 65-4 at 14). Therefore, the 300-day filing limit had not yet expired with respect to Sgt. Wetzel when Plaintiff filed the Amended Charge on December 14, 2022.[4] Therefore, the Amended Charge

---

[4] Plaintiff had until late January or early February 2023 to file an EEOC charge with respect to a discrete act of discrimination that took place sometime in April 2022. Plaintiff's argument emphasizes the difference between an EEOC charge filing and whether the EEOC or employer actually investigated the charge. (ECF No. 76 at 24-25). She argues "However, the focus in determining compliance with charge-filing requirements is on what the charging party provided to the EEOC, not on whether the EEOC effectively acted on that information." *Id.* at 24. With regard to Sgt. Wetzel, against whom the charge was timely filed by way of amendment, the Court is not concerned with whether the defendant properly downloaded the charge.

properly put Defendant on notice of the claims with respect to Sgt. Wetzel. *See Balas*, 711 F.3d at 408. Even if Plaintiff had not filed a proper amendment to her EEOC charge, a second charge regarding the Sgt. Wetzel allegations still would have been timely. *See id.* Regardless, *Balas* makes clear that amending an EEOC charge is the proper method by which to add allegations to a discrimination claim. *Id.* Therefore, the scope of Plaintiff's claim was properly expanded to include the allegations concerning Sgt. Wetzel under *Chacko* and *Balas*.

In contrast, the Plaintiff did not file any allegations regarding Sgt. Pauliuc until after she filed the present lawsuit in a Second Charge on October 15, 2024. (ECF No. 65-18). With respect to the scope of her lawsuit, Plaintiff argues that the First Charge and Amended Charge "provided more than ample information to the EEOC to investigate all of her claims, and none of her claims should be dismissed." *Id.* at 23. Filing such a charge as late as October 15, 2024 did not provide the requisite notice to Defendant that *Chacko* requires. *Chacko*, 429 F.3d at 512. Though Plaintiff had knowledge of both instances of alleged harassment by Sgt. Pauliuc at the time she filed her Amended Charge on December 14, 2022, she did not provide enough detail to put Defendant on notice that Sgt. Pauliuc also allegedly harassed her. At best, her First Charge indicates that Plaintiff "[was left] subject to retaliation by Cpl. Rowland and his coworkers, some of whom I do not identify by name here." (ECF No. 65-9 at 4). There is no indication that there are other unnamed harassers from 2020 or in October of 2022. *See id.* While it is true that a plaintiff need not allege every detail of every specific act of discrimination in an EEOC charge, a plaintiff "fails to exhaust [her] administrative remedies where, . . . [her] administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506. The allegations concerning Sgt. Pauliuc differ considerably from the allegations concerning Cpl. Rowland and Sgt. Wetzel. As Defendant points out, the Second

Charge's references to Sgt. Pauliuc include different time frames and different actors than the First Charge and Amended Charge. (ECF No. 82 at 4). In the Court's view, these acts are not sufficiently raised in the First and Amended Charges such that a reasonable investigation would reveal Sgt. Pauliuc's 2020 and October 2022 conduct. *Chacko*, 429 F.3d at 506.

Further, the Court is unpersuaded by Plaintiff's reliance on *Ajayi v. Aramark Business Serv's Inc.*, 336 F.3d 520, 529 (7th Cir. 2003). In *Ajayi*, the Seventh Circuit concluded that three incidents of racial discrimination alleged in the complaint, and not her EEOC charge, were not cognizable because she failed to exhaust her administrative remedies. *Id.* at 529-530. To that end, the court reasoned that at the time the plaintiff filed her charge, she was aware of the conduct and suspected at the time that the conduct was motivated by a racial animus and nevertheless failed to include the allegations. *Id.* at 530. Similarly, as of the December 14, 2022 Amended Charge, each of the alleged incidents concerning Sgt. Pauliuc had already occurred, but Plaintiff did not refer to Sgt. Pauliuc by name or to the incidents by date in her Amended Charge. *See id.* The claims that Plaintiff had been sexually harassed by two different employees on particular dates likewise does not reasonably lead one to conclude that a third individual sexually harassed her on an entirely different date. *Id.* Accordingly, the record does not support including the allegations concerning Sgt. Pauliuc.

Based on the record before it, the Court concludes the allegations concerning Sgt. Wetzel were timely filed and are therefore properly included in the scope of this lawsuit as a matter of law. The allegations concerning Sgt. Pauliuc, however, were not of the type that a reasonable investigation into the First and Amended Charge would reveal. Therefore, the Court must dismiss the claims against Sgt. Pauliuc as a matter of law.

2.    Allegations of Selective Discipline and Vehicle Damage

Defendant further urges the Court to dismiss the retaliation claims based on vehicle damage and selective discipline for failure to exhaust administrative remedies. (ECF No. 65-2 at 20). Based on the Court's review of the record, it is true that the claims based on selective discipline and property damage to Plaintiff's vehicle were not alleged in her EEOC charges. (ECF Nos. 65-9, 65-14, 65-15). Defendant argues these claims are barred as a matter of law because Plaintiff "should have included any additional allegations that she knew of" when she filed the Amended Charge and the Second Charge. (ECF No. 65-2 at 21). "Any discrete allegations of retaliation about which [Plaintiff] had knowledge when she filed her amended charge … or second charge … but failed to include in those charges, are barred from prosecution in this subsequent lawsuit." *Id.* In response, Plaintiff argues "Retaliation that follows protected activity need not be separately charged with the EEOC if it is reasonably related to the initial charge." (ECF No. 76 at 28) (citing *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992)). Therefore, the issue is whether Plaintiff's failure to include allegations of property damage and selective discipline when both occurred after she filed her First Charge supports a conclusion that Plaintiff failed to exhaust her administrative remedies as a matter of law.

As set forth in greater detail above, the timeline of events is as follows: Plaintiff filed the First Charge on August 21, 2022. (ECF No. 65-9 at 2). The Summary Judgment memoranda and Amended Complaint suggest Plaintiff and Mr. Mikhov were disciplined for clocking in and out of a different facility on November 16, 2022. (ECF No. 56 at 11). Plaintiff filed the Amended Charge on December 14, 2022. (ECF No. 65-14 at 2). Then, the parties seem to agree Plaintiff filed an internal report regarding property damage inflicted upon her vehicle while parked at RCI on

October 13, 2023.[5] (ECF No. 76 at 28). Finally, Plaintiff filed the Second Charge on October 15, 2024. (ECF No. 65-15).

What a plaintiff must include in an EEOC charge of retaliation differs slightly from what a plaintiff must include in an EEOC charge of discrimination. *See Plunkett v. Potter*, 751 F.Supp.2d 807, 811 (D. Md. 2010) (citing *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992)). Under the "relation-back" rule, "once a party has properly filed an EEOC charge for discrimination, she is not required to file a new charge for retaliation that is related to claims made in the initial charge." *Id. Nealon v. Stone* resolved "whether a plaintiff asserting a Title VII claim of retaliation for filing a previous EEOC charge must exhaust administrative remedies before suing in federal court." *Nealon*, 958 F.2d at 590. On that issue, the Fourth Circuit held that when a plaintiff files a Title VII charge with the EEOC and then brings suit alleging retaliation for taking such a protected action, the plaintiff will not be barred for failure to allege the retaliatory acts in an EEOC charge. *Id.* The court there recognized that any other rule could have a chilling effect on plaintiffs who may be "gun shy" of filing additional charges after suffering retaliation for filing a charge of discrimination. *See id.* Of course, *Nealon* does not circumvent the requirement that a Plaintiff exhaust administrative remedies altogether. *E.g.*, *Tonkin v. Shadow Management, Inc.*, 605 Fed. App'x 194, 194 (4th Cir. 2015) (concluding that the district court properly dismissed retaliation claims when the plaintiff had knowledge of the factual basis for her retaliation claim before she filed a charge with the EEOC); *Dickerson v. Mack Trucks, Inc.*, Civil No. WDQ-12-2593, 2013 WL 3507508, at *3-*4 (D. Md. July 10, 2013) (reasoning that *Nealon* did not excuse a plaintiff's failure to exhaust administrative remedies because his termination occurred before he filed his EEOC charge).

---

[5] Plaintiff attached 562 pages of discovery to her summary judgment memoranda, which the Court reviewed. (ECF No. 76). There is no citation to a date upon which Plaintiff's vehicle was damaged.

In *Nealon*'s wake, courts have made clear that the *Nealon* holding applies when the alleged retaliation occurs in response to the filing of the EEOC charge itself, and not in other circumstances, like retaliation in response to filing an internal complaint. *Crosten v. Kamauf*, 932 F.Supp. 676, 683 (D. Md. 1996). For example, in *Kaumauf*, this Court held *Nealon* was inapplicable because the plaintiff had already been terminated at the time she filed her EEOC charge, and she nevertheless failed to include reference to her termination in her EEOC charge. *Id.* It reasoned that "[i]f [the plaintiff] believed that this termination was in retaliation for [protected activity], she could have amended the [EEOC] summary and marked the box entitled 'retaliation' before signing the form. Plaintiff's failure to do so robbed the parties of the opportunity to address this issue in the administrative proceeding." *Id.* The Court noted that the "concerns raised in *Nealon* about a complainant's reluctance to file a second charge are simply not relevant here." *Id.* Similarly, in *Riley v. Technical & Management Services, Inc.*, this Court concluded *Nealon* did not apply when the plaintiffs failed to include in their EEOC charges any reference to alleged retaliatory termination and criticisms which had already occurred at the time of filing. *Riley v. Technical and Management Services Corp., Inc.*, 872 F.Supp. 1454, 1459-60 (D. Md. 1995). In *Riley*, the Court reasoned that a plaintiff "must exhaust…administrative remedies when the alleged retaliation could have been raised in the original EEOC complaint." *Id.* at 1460. Accordingly, because "each act of retaliation occurred prior to filing with the EEOC" and the plaintiffs "still did not allege retaliation in their charges," the Court distinguished the case from *Nealon*. *Id.* Defendants rely on *Tonkin v. Shadow Management, Inc* and *Dickerson v. Mack Trucks, Inc*, which also present scenarios in which the alleged retaliatory termination occurred in full before the plaintiffs filed any EEOC charge. *Tonkin*, 605 Fed. App'x at 194; *Dickerson*, 2013 WL 3507508, at *3-*4. None of these cases present a scenario in which the alleged retaliation continued after

the original filing. *Crosten*, 932 F.Supp. at 683; *Riley*, 872 F.Supp. at 1459-60; *Tonkin*, 605 Fed. App'x at 194; *Dickerson*, 2013 WL 3507508, at *3-*4.

The record here is readily distinguishable from those cases. First, plaintiff was not terminated, meaning as a matter of policy, that it was possible workplace retaliation could continue after filing the First Charge. Second, the fact that the selective discipline and property damage allegedly occurred after Plaintiff filed the First Charge and Amended Charge makes clear that the retaliatory acts had not occurred in full at the point of filing the First Charge. *But see Tonkin*, 605 Fed. App'x at 194; *Dickerson*, 2013 WL 3507508, at *3-*4. It seems true that Plaintiff had knowledge of the selective discipline by the time she filed her Amended Charge and knowledge of the property damage by the time she filed the Second Charge. But the record does not include any facts that allow the Court to infer either act was unrelated to filing Plaintiff's First Charge. Indeed, the Amended Complaint suggests Plaintiff and Mr. Mikhov were reprimanded for clocking in and out of a different facility on November 16, 2022. (ECF No. 56 at 11). At that point, Plaintiff already filed the First Charge, in which she alleged the harassment by Cpl. Rowland and retaliatory acts such as denying scheduling change requests, overtime rights, and requests to work shifts away from Cpl. Rowland. (ECF No. 65-9). Accordingly, it is unclear whether—and entirely possible that—Plaintiff and Mr. Mikhov were selectively disciplined for a common clock-in, clock-out practice in November 2022 because she filed an EEOC charge alleging complaints about Cpl. Rowland in August 2022.[6] Such a possibility is the kind of retaliation claim *Nealon* strives to protect from dismissals for failure to exhaust administrative remedies. *See Nealon*, 958 F.2d at 590. (reasoning that "[H]aving once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun-shy about inviting further retaliation by filing a second charge

---

[6] The same reasoning applies to the property damage inflicted upon her vehicle.

complaining about the first retaliation") (citation omitted) (alteration in original).  Based on the record before it, the Court cannot conclude that the allegations here present scenarios like *Crosten*, *Riley*, *Tonkin*, or *Dickerson*, in which the plaintiff was terminated before filing the original EEOC charge.  *Crosten*, 932 F.Supp. at 683; *Riley*, 872 F.Supp. at 1459-60; *Tonkin*, 605 Fed. App'x at 194; *Dickerson*, 2013 WL 3507508, at *3-*4.  Therefore, the Court cannot conclude as a matter of law that Plaintiff failed to exhaust administrative remedies with respect to these allegations.  Accordingly, Defendant's Motion for Summary Judgment as to selective discipline and property damage is DENIED.

### B.      Plaintiff Was Suspended for Legitimate, Nondiscriminatory Reasons.

Defendant seeks summary judgment on Plaintiff's retaliation claim based on her 2024 suspension. (ECF No. 65-2 at 21). "Title VII bars employers from taking a materially adverse action against an employee in retaliation for opposing an unlawful employment practice covered under the statute, such as making a complaint of sex…discrimination." *Hunt v. Constantine Com. Constr.*, No. CV TDC-20-1846, 2023 WL 2744491, at *9 (D. Md. Mar. 31, 2023); 42 U.S.C. § 2000e-2(a). In order to survive summary judgment, a plaintiff must produce evidence showing a prima facie case of retaliation.  *Id.* To do so, the record must show that the plaintiff (1) engaged in a protected activity; (2) the defendant took an adverse employment action against her, and (3) there is a causal connection between the protected activity and the adverse action.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61 (2006); *Foster v. Univ. of Maryland E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015); *King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003).  Both direct and indirect evidence of a retaliatory animus suffice under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Foster*, 787 F.3d at 250-51.  "The *McDonnell Douglas* framework is a three-step burden-shifting framework used by Title VII plaintiffs who lack direct evidence of retaliatory discrimination." *Id.* a 250. (citing *Diamond v. Colonial Life &*

*Acc. Ins. Co.*, 416 F.3df 310, 317-18 (4th Cir. 2005)).  First, a plaintiff must establish a prima facie

case of retaliation.  *Id.* Then, the burden shifts to the employer to show the alleged retaliatory

action was the result of a legitimate non-retaliatory reason. *Id.* Upon doing so, the burden shifts

back to the plaintiff, who may still prove causation if she can show the employer's purported

purpose were a mere pretext for discrimination.  *Id.*

      To that end, Defendant argues there is no genuine issue of material fact because (1) there

is no temporal proximity between Plaintiff's Charges and her suspension and proposed termination

and (2) RCI had legitimate, nondiscriminatory reasons based on Mr. Scott's allegations to suspend

Plaintiff.  (ECF No. 65-2 at 23-24).  Based on the Court's review of the summary judgment

memoranda, the Court understands Defendant's argument as a response to the *McDonnell Douglas*

framework; that is, Plaintiff did not generate a prima facie case of causation because the suspension

took effect two years after he report, and RCI had legitimate, nondiscriminatory reasons based on

Mr. Scott's allegations to terminate plaintiff should the analysis proceed that far.  *Id.*  Plaintiff's

*McDonnell Douglas* argument is unclear, but Plaintiff refers to a purported escalation of retaliatory

acts.  (ECF No. 76 at 28). She argues, "[t]he timing and escalation of retaliatory acts can itself

support a causal inference.[7]"  *Id.* She continues by listing a series of retaliatory acts:

> • **Warnings of targeting**. Lieutenant Edwards told Sgt. Mikhov that
> management was "out to get her" and that she needed to "walk on eggshells"
> because officials were watching her every move in order to "stress [her]
> out" and push her out of the institution. Pl.'s Ex. 2, Mikhov Dep. 99:6–
> 100:21 (June 12, 2024). Lt. Younker confirmed that "everybody talks"
> about Plaintiff's complaints and that "everybody … walks on eggshells
> around her," acknowledging that her reputation was damaged after she
> reported misconduct. Pl.'s Ex. 7, Younker Dep. 32:6–33:17, 35:4–5 (June
> 4, 2024).
>
> • **Selective discipline**. Plaintiff was formally reprimanded for clocking in at
> the Maryland Correctional Training Center, even though male officers

---

[7] Plaintiff points to one inapposite out-of-circuit case in support of this proposition.  *Horton v. Jackson Cnty. B.d of Cnty. Comm'rs*, 343 F.3d 897, 898 (7th Cir. 2003) (analyzing an administrative exhaustion issue).

engaged in the same practice without consequence. Pl.'s Ex. 36-3, Cosens-Wagaman Dep. 209:8–210:15 (Sept. 16, 2024). Defendants admitted in discovery that while others sometimes clocked in at the training center, only Plaintiff and one other officer were investigated and disciplined. Pl.'s Ex. 8, Resps. to Reqs. for Admis. Nos. 27–28.

• **Denial of opportunities**. Plaintiff was denied overtime and schedule accommodations that she previously received after she began reporting harassment. Pl.'s Ex. 36-3, CosensWagaman Dep. 209:8–210:15.

• **Property damage**. In 2023, Plaintiff discovered her car had been vandalized while parked at RCI. She promptly reported the incident to DPSCS, sending photographs on October 13, 2023, and a written report on November 1, 2023. DPSCS 3724, 3727–28. Defendants' assertion that Plaintiff could not identify when the damage occurred ignores this contemporaneous reporting.

• **Escalation to suspension and termination**. Retaliation culminated in September 2024 when Officer Scott accused Plaintiff of harassment—allegations that were inconsistent with the video, contradicted by other witnesses, and reported only after the Warden (who is a Defendant in this lawsuit) instructed Scott to "put it on paper." Pl.'s Ex. 5, Scott Dep. 28:9–12, 31:2–6 (July 2, 2025). Nonetheless, DPSCS seized on these disputed claims to suspend Plaintiff and recommend her termination.

*Id.* at 28-29

According to Plaintiff, each of these examples, taken together, shows a sequence of retaliation that "strongly supports a causal link." *Id.* at 29.

Even assuming however that the conduct Plaintiff describes establishes a prima facie case showing a causal link between Plaintiff's internal reports and her suspension, [8] Defendant has offered a legitimate, non-retaliatory reason for suspending Plaintiff. In the Court's view, the arguments made in the Plaintiff's summary judgment memorandum are unavailing. Based on the Court's review of the record, the Defendant's reasoning for Plaintiff's suspension does not depend on the credibility of Officer Scott's testimony when weighed against Plaintiff's testimony. This is

---

[8] The Court agrees with Defendant's proposition that such a case cannot be made based on an inference of time, as two years passed between the last protected activity and Plaintiff's suspension. *Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Roberts v. Glenn Indus. Group, Inc.*, 988 F.3d 111, 127 (4th Cir. 2021).

more than a mere he-said-she-said with respect to an alleged unwitnessed, one-on-one instance of harassment. (*See* ECF No. 65-14) (relying on multiple witnesses and photo evidence). Moreover, there is no evidence suggesting that it is a pretext for suspending Plaintiff because she brought the present case or any of the reports referenced therein. Indeed, the last instance in which Plaintiff engaged in a protected activity before her suspension was when she made the October 2022 internal report against Sgt. Pauliuc. (ECF No. 65-2 at 20). The allegations of the bite and sexual harassment did not arise until two years later, at some point between August 21, 2024 and September 9, 2024. (ECF No. 65-14 at 4). Regardless of whether video depicts a true bite or mere "horseplay," both parties agree that Plaintiff put her mouth on Officer Scott's arm. (ECF No. 15 at 15). ("I put my mouth on his arm."). According to a forty-two-page investigation for which there was video and photo evidence and testimony from multiple witnesses, Defendant concluded Plaintiff violated multiple department policies for multiple instances of witnessed-conduct. (ECF No. 65-14). At no point does the investigation reference any of the complaints Plaintiff made two years earlier. *Id.*

Accordingly, the burden shifts back to Plaintiff to rebut these legitimate, nondiscriminatory reasons. *Foster*, 787 F.3d at 250. Under the *McDonnell Douglas* framework, Plaintiff has generated no evidence to rebut this claim. *See id.* Rather, she argues—without pointing to any evidence explaining how it may be so—that every allegation of retaliation supports an inference of a causal link when taken together. (ECF No. 76 at 29). Of course, inferences do not suffice at this juncture, and the Court cannot find any evidence in the record suggesting the property damage to Plaintiff's vehicle or Officer Scott's report were connected to the acts from 2022. *See Deans*, 152 F.3d at 330-31 (emphasizing a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences). Therefore, Plaintiff's claim

based on her suspension fails as a matter of law. Defendant's Motion for Summary Judgment with respect to Plaintiff's retaliation claim based on a suspension is GRANTED.

### C. There Exists a Genuine Issue of Material Fact as to Whether the Department took Appropriate Action in Response to Plaintiff's Sexual Harassment Reports.

Finally, Defendant argues that it is entitled to judgment in its favor on Plaintiff's claims because "it took appropriate action." (ECF No. 65-2 at 25). "Actionable workplace sexual harassment claims come in two forms: (1) claims of a hostile work environment due to severe or pervasive sexual harassment and (2) claims of *quid pro quo* sexual harassment." *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 411 (D. Md. 2015) (citing *Pitter v. Cmty. Imaging Partners, Inc.*, 735 F. Supp. 2d 379, 390 (D. Md. 2010)). Plaintiff's claim is based on the first form. "To establish a Title VII claim for sexual harassment in the workplace, a female plaintiff must prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create a hostile work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). With respect to the fourth element, Defendant argues Plaintiff "has not established that she suffered a tangible employment action" because "[a]ny discipline she received was based on legitimate, non-discriminatory reasons following substantiated violations of Department policy." (ECF No. 65-2 at 25). Based on the analysis above, the Court agrees only to the extent of Plaintiff's claim based on her suspension. Further, as the claims against Sgt. Pauliuc are dismissed for failure to exhaust administrative remedies, the Court does not consider the arguments raised with respect to Sgt. Pauliuc. The remaining argument Defendant posits that the Defendant "took immediate action to investigate" Plaintiff's allegations, though it was "unable to substantiate" each one. *Id.* at 29. Plaintiff argues the Defendant practiced selective enforcement

of its policies because the department was unable to substantiate any of Plaintiff's allegations but did substantiate the allegations against Plaintiff.  (ECF No. 76 at 31).

In the Court's view, and in consideration of the record before and arguments set forth in the Parties' summary judgment memoranda, to say that Defendant was reasonable because it conducted an investigation would be an over-simplification of the issues and the case law.  *E.g.*, *Foster*, 787 F.3d at 255. ("Sexual harassment is imputable to an employer when the employer knew or should have known about the harassment and failed to take effective action to stop it."). Indeed, "[o]nce the employer has notice, it must respond with remedial action reasonably calculated to stop the harassment."  *Roberts*, *Glenn Indus. Grp., Inc.*, 998 F.3d 111, 118 (4th Cir. 2021) (citing *Amirmokri v. Balt. Gas & Elec.*, 60 F.3d 1126, 1131–32 (4th Cir. 1995)).  Further, "[k]nowledge of harassment can be imputed to an employer if a reasonable person, intent on complying with Title VII, would have known about the harassment." *Id.*

Here, there exists a genuine issue of material fact regarding, at least, whether (1) the Defendant's conduct was reasonably calculated to prevent the harassment Plaintiff reported regarding Cpl. Rowland and (2) whether it had actual knowledge of Sgt. Wetzel's alleged harassment. While Defendants point to several examples in which investigations were undertaken and failed to substantiate Plaintiff's allegations, many of the allegations are word-versus-word issues, i.e., whether Cpl. Rowland and Sgt. Wetzel acted inappropriately when they were alone with Plaintiff.  Defendants do not point to any examples explaining why Plaintiff's description of one-on-one sexual harassment or assault was dismissed and Cpl. Rowland's and Sgt. Wetzel's were not.  Further, as Defendant concedes, Plaintiff reported to Captain Riffey that Sgt. Wetzel "tried to make advances on [her] and [she] felt uncomfortable being around him."  (ECF No. 82 at

11).  Even if uncorroborated, Plaintiff's testimony regarding her firsthand experience can be evidence of a disputed fact.

Indeed, "[C]ourts have 'long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'"  *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 212 (4th Cir. 2017) (quoting *Berry v. Chi. Trans. Auth.*, 618 F.3d 688, 691 (7th Cir. 2010)).  "Rather, if such an affidavit is based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts."  *Id.* (quotation omitted); *see also Allegis Grp., Inc. v. Bero*, No. CV ELH-22-686, 2023 WL 5989438, at *20 (D. Md. Sept. 1, 2023) ("But, if testimony is based on personal knowledge or firsthand experience, it can be evidence of disputed material facts, even if it is uncorroborated and self-serving.") (citing *Lovett*, 700 F. App'x at 212).

Based on Plaintiff's testimony, a reasonable jury could conclude that Defendant knew of the report Plaintiff made to Captain Riffey and selectively enforced its policies with respect to her allegations against Cpl. Rowland and Sgt. Wetzel.  Therefore, there exists a genuine dispute of material fact regarding the Defendant's conduct and knowledge.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 65) is granted in part and denied in part.  Defendant's motion is granted to the extent that it is entitled to summary judgment regarding Plaintiff's claims based on Sgt. Pauliuc's conduct and her 2024 suspension, and those claims are hereby dismissed in entirety as a matter of law.  Defendant's motion is otherwise denied to the extent that genuine disputes of material fact exist regarding Defendant's liability for sexual harassment, hostile work environment, and retaliation claims set forth in Counts I-IV.  The parties are hereby directed to confer and jointly inform the Court within fourteen (14) days from the date of this Memorandum Order and Opinion whether there is mutual

desire to participate in a settlement conference with Judge Miller before proceeding to schedule a

trial and related dates.


Date: <u>October 22, 2025</u>                                             _____/s/_____

                                                      J. Mark Coulson
                                                      United States Magistrate Judge